**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | |
|---|---|
| **EVERETT PROBST,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | EP-22-CV-00286-RFC |
| § | |
| **KILOLO KIJAKAZI,** § | |
| **Acting Commissioner of Social Security,** § | |
| § | |
| *Defendant*. § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Everett Probst appeals from the decision of the Acting Commissioner of the Social Security Administration, denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Upon both parties' consent to proceed before a United States Magistrate Judge, the Honorable United States District Judge David Guaderrama referred this case to the undersigned to conduct all proceedings and order the entry of judgment pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 13.) For the following reasons, the Court finds that the Commissioner's decision should be **AFFIRMED**.

**I.  PROCEDURAL HISTORY**

On September 15, 2020, Probst filed a DIB application alleging disability beginning on February 22, 2019, due to diabetes mellitus with neuropathy in the hands, legs, and feet, degenerative disc disease with disc herniation in the back, arthritis in the back, hypertension, scoliosis, vertigo, and nerve damage in the back. (R:85, 212–16.) Probst later amended his alleged onset date to May 3, 2019. (R:15, 321–22.)

Probst's application was initially denied on December 8, 2020 (R:84–95) and again upon reconsideration on February 5, 2021 (R:96–107). On November 16, 2021, Administrative Law

1

Judge ("ALJ") Shannon Heath conducted a hearing. (R:32–67.) The ALJ issued an unfavorable determination on December 23, 2021. (R:11–31.) The Appeals Council denied Probst's request for review on June 28, 2022. (R:1–7.) Thus, the ALJ's decision became the Commissioner's final decision in Probst's case. (R:1.)

## II. DISCUSSION

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to a determination of (1) whether the Commissioner's final decision is supported by substantial evidence on the record and (2) whether the Commissioner applied the proper legal standards. *See* 42 U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

Substantial evidence is more than a scintilla but less than a preponderance and is "sufficient for a reasonable mind to accept as adequate to support a conclusion." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993). To determine whether substantial evidence supports the Commissioner's decision, courts weigh "four elements of proof": "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history." *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). A court must "scrutinize the record" but "may not reweigh the evidence, try the issues de novo, or substitute [the court's] judgment for that of the [Commissioner]." *Haywood v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989) (per curiam); *see also Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) ("Conflicts of evidence are for the Commissioner, not the courts, to resolve."). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir.

2001) (internal quotes and citations omitted).  If substantial evidence supports the Commissioner's findings, they are conclusive and must be affirmed.  *Perez*, 415 F.3d at 461.

A court's finding of legal error requires either automatic reversal or harmless error analysis, depending on the steps taken to reach the Commissioner's final decision.  *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021); *see infra* Section II.B.  Broadly, "[h]armless error exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err."  *Keel*, 986 F.3d at 556.  Courts apply harmless error analysis "to preserve judgments and avoid waste of time."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam) ("Procedural perfection in administrative proceedings is not required.").

## B. Evaluation Process

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i).  An ALJ evaluates disability claims according to a five-step sequential process: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe medically determinable impairment; (3) whether the claimant's impairment meets or medically equals the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from performing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work.  20 C.F.R. § 404.1520(a)(4).

Between steps three and four, the ALJ determines the claimant's "residual functional capacity" ("RFC").  *Id.* § 404.1520(e).  The RFC "is the most [the claimant] can still do" despite

the limitations caused by his physical and mental impairments. *Id.* § 404.1545(a)(1). The ALJ then considers the RFC to make the step four and step five determinations. *Id.* § 404.1520(e).

At the first four steps, the claimant bears the burden of proving that he is disabled. *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). If the claimant meets this burden, at step five the burden shifts to the Commissioner "to show that there is other substantial gainful employment available that the claimant is capable of performing." *Id.* at 1301–02. If the Commissioner satisfies this burden, "the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* at 1302.

## C. The ALJ's Findings

In this case, at step one, the ALJ found that Probst had not engaged in substantial gainful activity since May 3, 2019, the amended alleged onset date of disability. (R:17–18.) At step two, the ALJ found that Probst had severe impairments of degenerative disc disease, diabetes mellitus with neuropathy, vertigo, and obesity. (R:18.) At step three, the ALJ found that Probst did not have any impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

For Probst's RFC, the ALJ determined that he could perform light work as defined in 20 C.F.R. § 404.1567(b), except as follows:

> he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs and crawl; he can frequently, but not constantly, stoop, kneel, crouch, and balance; he must avoid all exposure to cold temperatures and vibrations; and he must avoid all exposure to unprotected heights and moving machinery.

(*Id.*)[1]

---

[1] A "light work" job requires either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). "If someone can do light work, [the Commissioner] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." *Id.*

At step four, the ALJ found that Probst's RFC did not preclude him from performing his past relevant work as a phlebotomist. (R:25.) Accordingly, the ALJ concluded, Probst was not disabled from May 3, 2019, through the date of her decision, December 23, 2021. (R:26.)[2]

 D. Analysis

Probst alleges that the ALJ erred by (1) failing to obtain additional medical opinions after finding all medical opinions of the record to be unpersuasive; and (2) failing to provide a reasonable basis for discounting Dr. Dwayne Friday's medical opinion. (ECF No. 9:16–21.) The Court first addresses the ALJ's treatment of Dr. Friday's opinion because that issue is implicated in Probst's argument regarding the ALJ's failure to obtain additional medical opinions.

   1. **ALJ's Treatment of Dr. Friday's Opinion**

Probst contends that the ALJ erred by failing to articulate the "supportability" and "consistency" of Dr. Friday's medical opinion, as required by 20 C.F.R. § 404.1520c. (*Id.* at 19.)

The ALJ determines the RFC by examining "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). When assessing "medical opinions" and "prior administrative medical findings" as evidence, the ALJ must explain the persuasiveness of such evidence in her opinion. *Id.* § 404.1520c(a).[3] Persuasiveness is based on a number of factors that the ALJ must consider, but the ALJ is only required to articulate "supportability" and

---

[2] The ALJ determined that Probst would remain insured through December 31, 2022, so for DIB purposes, Probst had to establish disability on or before that date. (R:16.)

[3] The ALJ does not need to articulate persuasiveness for statements from nonmedical sources. 20 C.F.R. § 404.1520c(d). Additionally, "[n]ot all statements by medical providers are considered medical opinions." *William T. v. Comm'r of Soc. Sec.*, No. 6:18-CV-0055-BU, 2020 WL 6946517, at *3 (N.D. Tex. Nov. 25, 2020). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [he has] one or more impairment-related limitations or restrictions" in the ability to perform physical, mental, or other demands of work, or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). By contrast, "[o]bjective medical evidence is medical signs, laboratory findings, or both." *Id.* § 404.1513(a)(1). And "other medical evidence" includes "judgments about the nature and severity of" the claimant's impairments, his medical history, "clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

"consistency" in her decision. *Id.* § 404.1520c(b)(2). "Supportability" means that a medical opinion is "more persuasive" when it is supported by relevant objective medical evidence and explanations provided by the same medical source. *Id.* § 404.1520c(c)(1). "Consistency" means that a medical opinion is "more persuasive" when it coincides "with the evidence from other medical sources and nonmedical sources in the claim." *Id.* § 404.1520c(c)(2). In other words, "supportability looks internally to the bases presented by the medical opinion itself" while "consistency is an external inquiry that juxtaposes a medical opinion to other evidence in the record, including opinions of other medical professionals." *Sharon H. v. Kijakazi*, No. 5:21-CV-167-H, 2022 WL 3951488, at *3 (N.D. Tex. Aug. 31, 2022).

The ALJ's explanation of persuasiveness must "enable[] the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence" and must not "require the [c]ourt to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 499 (S.D. Miss. 2021). "Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021) (citing *Ramirez v. Saul*, No. SA-20-CV-00457-ESC, 2021 WL 2269473, at *6 (W.D. Tex. June 3, 2021)), *report and recommendation adopted*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021).

Here, the ALJ considered Dr. Friday's September 17, 2021, opinion to be a "medical opinion." (R:24–25) (prefacing that she "fully considered the medical opinions and prior administrative medical findings in this case as follows," and then citing Dr. Friday's opinion as Exhibit B11F); *see* (R:825–33) (Exhibit B11F). The ALJ differentiates this medical opinion from

6

Dr. Friday's "treatment records," cited as Exhibit B8F. *See* (R:22, 679–731.) The parties do not dispute the ALJ's characterization of Dr. Friday's opinion. *See* (ECF Nos. 9:19; 10:11–14.)

In his opinion, Dr. Friday stated, *inter alia*, that Probst would be off-task for twenty-five percent of a typical workday; miss four days of work per month; could occasionally lift and carry ten pounds; could sit, stand, and walk for two hours total in an eight-hour work day; would need to lie down at least every three to four hours for fifteen to twenty minutes at a time; and would need to elevate his legs while sitting. (R:830–33); *see* (ECF Nos. 9:19; 10:12–13.) The ALJ acknowledged that "Dr. Friday opined limitations that would preclude the claimant from all full-time work activity." (R:25.) She deemed Dr. Friday's opinion unpersuasive "because it is not supported by treatment records and is inconsistent with the totality of the objective medical evidence of record including several records of evaluations by the claimant's physical therapist that were submitted after the hearing." (*Id.*)

As mentioned, Probst contends that the ALJ failed to articulate the "supportability" and "consistency" of Dr. Friday's opinion. (ECF No. 9:19.) The Commissioner responds that the ALJ "properly considered the persuasiveness of Dr. Friday's medical opinion that was contradicted by the medical reports of physical therapist [Antonio] Durant and the 'totality of the objective medical evidence.'" (ECF No. 10:13–14) (quoting R:25).

The Court finds the ALJ's supportability assessment for Dr. Friday's opinion to be deficient. The ALJ summarized some of the observations from Dr. Friday's treatment records but did not explain how those observations failed to support Dr. Friday's opinion. *See* (R:25); (R:22) (stating only that Dr. Friday's treatment records "show the claimant's treatment for his physical conditions including diabetes mellitus, polyneuropathy, low back pain, and benign paroxysmal vertigo," citing (R:691–97), and that "[a] physical examination [by Dr. Friday] showed several

normal results including normal neurologic signs, normal motor strength, intact sensation, normal findings of the extremities including no clubbing, cyanosis, or edema; and full range of motion of the claimant's neck," citing (R:694)).[4] The ALJ failed to bridge the gap between the evidence and her supportability determination, and without such guidance, the Court is left to speculate why Dr. Friday's records fail to support his medical opinion. *See, e.g.*, *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *3 & n.2 (5th Cir. Jan. 18, 2023) (per curiam); *Cooley*, 587 F. Supp. 3d at 499–500; *Ramirez*, 2021 WL 2269473, at *4–6; *Bjorklund v. Kijakazi*, No. 4:21-cv-01810, 2022 WL 2392315, at *4–5 & n.1 (S.D. Tex. July 1, 2022), *report and recommendation adopted*, 2022 WL 2905471 (S.D. Tex. July 22, 2022).[5] This is legal error. *Miller*, 2023 WL 234773, at *3; *Cooley*, 587 F. Supp. 3d at 500.

The ALJ also erred by failing to provide a sufficient consistency assessment. Namely, while she recites some of the objective medical evidence and refers to the "totality of the objective medical evidence of record," she does not explain how the evidence conflicts with Dr. Friday's opinion. (R:19–25); *see, e.g.*, *Miller*, 2023 WL 234773, at *3 & n.2; *Cooley*, 587 F. Supp. 3d at 499–500; *Ramirez*, 2021 WL 2269473, at *4–6; *Terry*, 2023 WL 2586304, at *6–7; *Bjorklund*, 2022 WL 2392315, at *4–5 & n.1. The Court cannot meaningfully review this generic analysis. *Cooley*, 587 F. Supp. 3d at 500. The ALJ better narrows her analysis when she refers to "several records of evaluations by the claimant's physical therapist [Durant] that were submitted after the hearing," but still fails to explain how that evidence conflicts with Dr. Friday's opinion. (R:25); *see* (R:15). In her brief, the Commissioner tries to provide that explanation by reciting some of

---

[4] The ALJ also stated that the treatment notes from Dr. April Frowner, "who works in the clinic with Dr. Friday," would not support Dr. Friday's medical opinion, presumably because Dr. Frowner and Dr. Friday are not the same "medical source." *See* (R:22) (citing R:684–90); 20 C.F.R. § 404.1520c(c)(1).

[5] *Cf, e.g.*, *Terry v. Comm'r, SSA*, No. 4:20-CV-618-SDJ, 2023 WL 2586304, at *5–6 (E.D. Tex. Mar. 21, 2023) (exemplifying supportability articulation that meets the regulatory requirement).

8

Durant's observations and stating that they "do not support Dr. Friday's extreme limitations expressed in his . . . opinion." (ECF No. 10:13.) The Court cannot make such post hoc inferences. *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Haywood*, 888 F.2d at 1466.

In sum, the ALJ erred by failing to sufficiently articulate the supportability and consistency of Dr. Friday's opinion per 20 C.F.R. § 404.1520c.

### a. Harmless Error

When the ALJ proceeds past step two and commits error, "remand is warranted only if the ALJ's error was harmful." *Miller*, 2023 WL 234773, at *3 (citing *Shineski v. Sanders*, 556 U.S. 396, 407–08 (2009)); *see Keel*, 986 F.3d at 556 (discussing automatic reversal versus harmless error analysis). It is the plaintiff's burden to show prejudice or harm from the error. *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012).

In an unpublished opinion, the Fifth Circuit recently specified that, to show prejudice from an ALJ's failure to comply with 20 C.F.R. § 404.1520c articulation requirements, the plaintiff must "show that if the ALJ had given further explanation [of the medical opinions at issue], then she would have adopted them." *Miller*, 2023 WL 234773, at *4. Otherwise, the plaintiff would "essentially [be] asking [the court] to reweigh the evidence to show that she was prejudiced by the ALJ's failure to explain, which [the court] cannot do." *Id.* (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)). The Court reads *Miller* as a specific application of the broader principle that harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556.

Probst argues that Dr. Friday's opinion "was in fact consistent with and supported by the record, and thus should have been found persuasive in helping the ALJ to form the Plaintiff's RFC." (ECF No. 9:18.) He states that "[i]t appears in every instance where the ALJ finds evidence

9

that is consistent with and supportive of the opinion of Dr. Friday, such as decreased sensation or requiring ongoing vertigo rehabilitation, the ALJ is quick to point out other benign physical examinations."  (*Id.* at 21); *see* (*id.* at 20–21) (comparing parts of the ALJ's analysis with parts of the record that she did not discuss).  Probst "acknowledges that the ALJ is meant to be a factfinder," but nonetheless argues that "it cannot be ignored that the facts are at least equally supportive of the ALJ's lay RFC and the RFC of the Plaintiff's treating physician [Dr. Friday]."  (*Id.* at 21.)

These arguments fail to show that, had the ALJ sufficiently explained the persuasiveness of Dr. Friday's opinion, she would have adopted that opinion.  *Miller*, 2023 WL 234773, at *4.  He simply argues that the ALJ should have weighed the evidence differently, while acknowledging that the Court cannot reweigh the evidence and that the evidence could be read to support either the ALJ's RFC or Dr. Friday's RFC.  This is not enough to show harmful error.  *See Jones*, 691 F.3d at 735 (finding the argument that records and findings "might tip the balance in plaintiff's favor" insufficient to show harmful error).  Thus, the Court finds that the ALJ's error is harmless and does not call for remand.

### 2. ALJ's Failure to Obtain Additional Medical Opinions

Probst contends that because the ALJ "reject[ed] all medical opinions of record" at the RFC stage, she needed to "obtain [a] new opinion or otherwise rely on medical evidence that demonstrates how a plaintiff's impairments affect the ability to work."  (ECF No. 9:16.)  Probst says that the ALJ failed to do so and instead "substitut[ed] her own lay opinion to form the RFC."  (*Id.*)  Probst argues that this indicates both legal error and lack of substantial evidence.  (*Id.* at 16–18) (collecting cases, e.g., *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995)).

In response, the Commissioner acknowledges that "[t]he Fifth Circuit has explained that an ALJ cannot rely on his or her own opinion of the medical evidence to determine the effects of

Plaintiff's condition on his ability to work." (ECF No. 10:4) (citing *Williams v. Astrue*, 355 F. App'x 828, 832 n.6 (5th Cir. 2009) (per curiam), which in turn cites *Ripley*, 67 F.3d at 557). However, the Commissioner notes that the Fifth Circuit has also held that "where no medical statement has been provided, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record." (*Id.* at 5) (quoting *Ripley*, 67 F.3d at 557); *see also* (*id.* at 5–6, 10) (collecting cases, e.g., *Taylor v. Astrue*, 706 F.3d 600 (5th Cir. 2012) (per curiam) and *Gutierrez v. Barnhart*, No. 04-11025, 2005 WL 1994289 (5th Cir. Aug. 19, 2005)); (*id.* at 10) (citing SSR 96-8p, 1996 WL 374184, at *4–5, and 20 C.F.R. § 404.1546(c), for the premise that the "RFC is an administrative assessment for the ALJ to make regarding a claimant's capacity for work . . . [,] not a medical assessment for a physician to make"). The Commissioner argues that substantial evidence, aside from medical opinions, supports the ALJ's RFC. (*Id.* at 6–9.)

In reply, Probst compares his case to *Williams* instead of *Ripley* because here, medical opinions were available in the record for the ALJ's consideration, whereas no opinions were available in *Ripley*. (ECF No. 11:1–2.) He argues that the "ambiguity" of the record, without medical opinions, "could support several outcomes" and thus "cannot substantially support the ALJ's RFC without the opinion of a medical expert." (*Id.* at 3–4.)

The general consensus within the Fifth Circuit is that an ALJ does not err by failing to request additional medical opinions so long as substantial evidence supports the ALJ's determination. *Ripley*, 67 F.3d at 557 ("Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing. The absence of such a statement, however, does not, in itself, make the record incomplete." (footnotes omitted)); *Taylor*, 706 F.3d at 602–03 ("The record indicates that the ALJ used the medical

information provided by [plaintiff] to determine the plaintiff's [RFC] for work. Under the regulations and our case law, the determination of [RFC] is the sole responsibility of the ALJ. What Taylor characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work." (citation omitted)); *Joseph-Jack v. Barnhart*, 80 F. App'x 317, 318 (5th Cir. 2003) (per curiam) ("It is the ALJ's responsibility to determine a claimant's RFC, and such an assessment is not a medical opinion."); *Martinez*, 64 F.3d at 174 (holding that substantial evidence can consist of "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history").[6]

Contrary to Probst's argument, *Williams* is distinguishable from this case. First, in *Williams*, the medical opinions all concluded that the plaintiff could do no more than sedentary work, but the ALJ departed from the consensus by finding that the plaintiff could "stand or walk for six hours in an eight-hour workday." *Williams*, 355 F. App'x at 831. Here, the ALJ considered medical opinions that reached varied conclusions about Probst's ability to work. Aside from Dr. Friday and Dr. Luis Acosta, who each "opined limitations that would preclude [Probst] from all full-time work activity," Dr. Roberta Herman and Dr. Gary Smith each independently determined that Probst could "perform a full range of work at the medium exertional level." (R:24–25) (citing

---

[6] The issue of full and fair development of the record is often paired with arguments about the ALJ's "lay opinion" or "playing doctor," as argued by Probst here. *See, e.g.*, *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (per curiam) (refraining from determining whether the ALJ erred because such error would be harmless, but noting that "judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor . . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong." (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990))); *Beachum v. Berryhill*, No. 1:17-CV-00095-AWA, 2018 WL 4560214, at *4 (W.D. Tex. Sept. 21, 2018) ("Although the ALJ is afforded discretion when reviewing facts and evidence, he is not qualified to interpret raw medical data in functional terms; if an ALJ reaches conclusions as to a claimant's physical exertional capacity without a physician's assessment or in contradiction of a physician's medical assessment, then the decision is not supported by substantial evidence." (internal quotation marks omitted) (quoting *Melvin v. Astrue*, No. 1:08-CV-264-SAA, 2010 WL 908495, at *4 (N.D. Miss. Mar. 9, 2010))).

R:84–94, 96–106, 666–73). The ALJ found both Dr. Herman and Dr. Smith's opinions unpersuasive and ultimately determined a more restrictive RFC of light exertion. (R:18, 24–25.) Additionally, unlike in *Williams*, the ALJ's RFC does not specify to what extent Probst can walk or stand, instead relying on the regulatory definition of "light work" as requiring either "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls." (R:18); 20 C.F.R. § 404.1567(b).

Finally, the *Williams* court found absolutely "*no* evidence supporting the ALJ's finding that Williams can stand or walk for six hours in an eight-hour day." *Williams*, 355 F. App'x at 831. In contrast, here, substantial evidence supports the ALJ's RFC determination. As the ALJ points out, the medical records consistently reflect that Probst was satisfied with his pain management. (R:20–24) (citing records from Dr. Acosta and Spine and Rehab Specialists, e.g., R:545, 561–62, 576, 584, 972, 1043, 1045). The records also indicate an increase in walking distance and exercise over time, with some periods where he reported "walk[ing] all day." (*Id.*) (citing records from Dr. Acosta and Spine and Rehab Specialists, e.g., R:529–30, 569, 576, 584, 972, 1043). Records from Spine and Rehab Specialists also indicate, at times, "no limitation with sitting, transitional motions, standing, or walking" and that Probst could "exercise well." (R:23–24) (citing, e.g., R:989, 972, 1043). These are credible evidentiary sources that a reasonable mind would find supportive of the ALJ's RFC. *Boyd*, 239 F.3d at 704; *Spellman*, 1 F.3d at 360; *see, e.g.*, *Taylor*, 706 F.3d at 603 (finding substantial evidence supporting the ALJ's RFC assessment where plaintiff's medical records failed to corroborate his complaints of pain); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (finding substantial evidence that plaintiff could perform light work despite walking limitations).

Additionally, regarding Probst's vertigo, dizziness, and syncope, in October 2019, Dr. Acosta noted that Probst's "use of gabapentin seemed to be triggering his chronic vertigo/dizziness," but by April 2020, Probst "reported having no dizziness, mental fog or haze, or unsteadiness once he stopped using gabapentin."  (R:20) (citing R:537, 553).  In May 2021, Dr. Acosta noted that Probst "had been having 30- to 60-second episodes of bimonthly, moderate speed, horizontal, counterclockwise vertigo, and was having imbalance at least 10 to 12 times per month with some near falls or falls around once a year."  (R:21) (citing R:577).  In August 2021, Dr. Acosta noted that Probst's "episodes of vertigo lessened since the last visit, but [Probst] had one episode while doing physical therapy in July 2021 in which he required emergency room treatment."  (R:22) (citing R:584).  Regarding that emergency room visit, the University Medical Center of El Paso's records indicate, *inter alia*, normal and unremarkable results but that Probst was "unable to ambulate due to unsteadiness."  (*Id.*) (citing R:803–08).  Additionally, Dr. Frowner noted that Probst had "two episodes of vertigo and syncope in June 2021."  (*Id.*) (citing R:684–88).  Further, the Spine and Rehab Specialists noted Probst's "therapy for dizziness and unsteadiness on his feet," stating that in May 2019, Probst "tolerated the treatment well" and "wished to be discharged from treatment," but that in May 2021, he had a subsequent evaluation for dizziness and vertigo.  (R:24) (citing R:1021, 1114).  The therapy notes show Probst's improvement with therapy:

> On June 22, 2021, the claimant reported that he was feeling well and had only mild dizziness with no severe episodes.  The following month, . . . the claimant reported having no dizziness or headache.  On August 5, 2021, the claimant reported that he had been feeling very well the past few weeks and had no dizziness or vertigo.

(*Id.*) (citing R:1092, 1095, 1108).  The foregoing constitutes substantial evidence that Probst was not disabled "for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 416(i); *see, e.g.*, *Hollis v. Bowen*, 837 F.2d 1378, 1381, 1386–87 (5th Cir. 1988) (per

curiam) (finding substantial evidence for ALJ's decision that plaintiff could perform light work with some limitations despite symptoms including syncope); *Davis v. Kijakazi*, No. A-21-CV-418-RP-DH, 2022 WL 2761378, at *1, 3–4 (W.D. Tex. Apr. 14, 2022) (finding substantial evidence for ALJ's decision that plaintiff could perform light work with some limitations despite symptoms including "intermittent syncope" and dizziness), *report and recommendation adopted*, No. 1:21-CV-418-RP, 2022 WL 2718536 (W.D. Tex. May 3, 2022).

For the foregoing reasons, the Court finds that the ALJ's RFC is supported by substantial evidence, and thus, the ALJ did not err by failing to obtain additional medical opinions.

### a. Harmless Error

Even if the ALJ had committed a *Ripley* error, Probst has not shown prejudice from the alleged error, which is required for remand. *Keel*, 986 F.3d at 555 n.3. If the ALJ errs for failing to further develop the record, "prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22; *see also Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (per curiam) (explaining that plaintiff must "show that [s]he 'could and would have adduced evidence that might have altered the result'" (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984))). Probst has not shown prejudice here, nor has he met his burden of showing disability. *Fraga*, 810 F.2d at 1301; *Allen v. Kijakazi*, No. 21-30771, 2022 WL 7265517, at *2 (5th Cir. Oct. 12, 2022) (framing the burden as requiring plaintiff to "present[] positive evidence that [plaintiff] is incapable of performing" at the RFC level).

## III. CONCLUSION

For the foregoing reasons, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

**SIGNED** this 3rd day of May, 2023.

_____
**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**